IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
98 OCT 13 PM 2:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| HERMAN STIEFEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 97-JEO-1512-M |
| ) | |
| TYSON FOODS, INC., ) | |
| ) | |
| Defendant. ) | |

ENTERED
OCT 13 1998

## MEMORANDUM OPINION

In this action, the plaintiff, Herman Stiefel (Stiefel), a former employee of the defendant, Tyson Foods, Inc. (Tyson), asserts that he was the victim of age discrimination by Tyson and that he was discharged for retaliatory reasons, all in violation of the Age Discrimination in Employment Act (ADEA). The defendant has filed a motion for summary judgment. Upon due consideration, the motion is hereby granted in part and denied in part.

## I. BACKGROUND

Stiefel was hired as a driver when he was 58 by Carlos Herren (Herren) who supervised the Tyson Alabama feed mill operations in Oxford, Albertville, and Cullman. During his employment with Tyson, Stiefel drove a feed delivery truck. His responsibilities included delivering chicken and hog feed from the Tyson feed mill in Ivalee, Alabama, to contract chicken and hog growers serviced by the mill. He drove a

tank truck with an auger on the back that was used to dispense the feed from his truck to feed containers at various contract grower facilities.

Stiefel was provided with Tyson's Fleet Driver's Manual when he was hired. He had also been provided with an updated copy of the 1995 manual. The manuals included Tyson's safety policy and safety guidelines. They also include a driver "evaluation system." The system runs on a twelve month basis, from October 1 through September 30, and each driver is to be evaluated according to traffic violations on his motor vehicle records. If a driver accumulates nine to twelve points, he is to be issued a warning letter. Any driver that accumulates thirteen or more points during this period is "barred from operating a Tyson vehicle." (Plaintiff's Ex. 1, p. 13). Accidents that result in property damage less than $5,000 are assessed and resolved by the driver's immediate supervisor with counsel from the company's safety department. A review board is provided for accidents resulting in bodily injury or property damage above $5,000. Stiefel had a number of accidents while driving a feed truck from 1989 through 1994. Prior to 1995, however, there had been no talk about Stiefel's age or retirement.

According to Stiefel, in about January 1995, Herren began asking him about when he was going to retire. Herren was the only person that inquired about his retiring. He told Stiefel a number of times that they should retire together. Each time, Stiefel told him that he was not ready to retire yet. Stiefel estimated that during 1995 and until his termination in 1996, Herren mentioned Stiefel retiring approximately twelve to fifteen

2

times. (Plaintiff's Ex. 10, p. 140).

Stiefel's first accident that is of consequence in this action occurred on April 1, 1996. He ran a red light and hit a passenger vehicle. According to the police report, he was traveling at approximately 45 mph when he ran the light and struck the other vehicle. According to Stiefel, the light was green when he went through the intersection. He also stated that he was going 15 mph and not 45. He states that when he told the policeman that he was running about 15, the policeman responded that he did not think he was going that fast. The accident was investigated to a limited extent by David Pruitt, an assistant to Carlos Herren. There was little damage to the truck. Stiefel was charged six points against his driving record at Tyson as the accident was deemed by Herren to be preventable. Although he was aware that it was deemed by the company to have been preventable, Stiefel did not agree with that assessment and states that he was never informed that he was charged any points.

Stiefel's second accident in 1996 occurred on July 29. Another Tyson truck had been involved in an accident that caused a traffic delay. As Stiefel was in that traffic delay, he attempted to pass several other vehicles. When he did so, another vehicle cut in front of him to make a left turn. His brakes locked up and he slid into the car. Pruitt was again responsible for the investigation of this accident. Stiefel was charged another six points against his record for this accident. He complained to Herren about being charged the points and was told by Herren that there was a Safety Review Board

concerning the other Tyson accident that day and he could go to the review board. Stiefel attended the meeting and contended that he was not at fault in the accident. The assessment of the six points was maintained. This resulted in Stiefel having a total of twelve points assessed against his driving record. Stiefel did not receive any written warning from Tyson as explicitly required by their policy.

After the second accident, Herren had Stiefel undergo a physical examination seven months before he was scheduled. Stiefel was the only driver that was given an early examination. Stiefel noted that the examination was more extensive than the others he had received. He passed the examination and continued driving.

Stiefel's third accident was on September 30, 1996, the last day of the 12-month evaluation period. He was making a feed delivery to one of the local farmers. He was on a narrow dirt road that had been cut through the woods. He veered to the left side of the road in a bend to avoid two potholes and struck a stump on the side of the road. He made the delivery and returned to the plant where he told the next shift driver that the truck had a flat tire and a bent wheel. That driver took the truck to the shop for repairs. It was determined that the truck had two flat tires and one of the rims was rolled around the brake drum. The shop foreman, Danny Baker, called Herren to report the bent rim. Herren determined that the accident was preventable as Stiefel had run off the road and hit a fixed object. Herren charged Stiefel another six points against his record and decided to terminate him.

On October 8, 1996, Herren informed Stiefel that he had eighteen points under the evaluation system and that he was going to fire him. Herren terminated Stiefel's employment with Tyson that day.

Stiefel filed a charge of discrimination with the EEOC on October 16, 1996, and an amended charge on January 17, 1997. Therein, he claimed that he was the victim of age discrimination premised on the fact that he was "harassed in the performance of [his] job by being questioned [about] when [he] was going to retire. . . ." (EEOC Complaint signed January 17, 1997, p. 2). He also stated that he was discriminated against because [y]ounger employees have had accidents in trucks and were not discharged. . . ." (*Id.*, p. 2).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary

judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-323; *see Fed. R. Civ. P.* 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the

evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

## III. THE ADEA ANALYSIS

### A. Introduction

The ADEA prohibits an employer from discharging an employee because of his age if he is at least 40. 29 U.S.C.§§ 623(a)(1), 631(a). It also prohibits an employer from retaliating against an employee because the individual has made a charge of age discrimination. 29 U.S.C. § 623(d). The plaintiff may prove discrimination by direct evidence, by statistical proof, or circumstantial evidence. If the proof is via circumstantial evidence, the familiar three-step analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) applies. "Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case. . . ." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997), *cert. denied*, ___U.S.___, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998), *citing McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. "The effect of the presumption of discrimination created by establishment of the *prima facie* case is to shift to the employer the burden of producing legitimate,

8

nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528. If a defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by *McDonnell Douglas* "drops from the case" and "the factual inquiry proceeds to a new level of specificity." *Id.*, citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 n.10, 101 S. Ct. 1089, 1094-1095 n.10, 67 L. Ed. 2d 207 (1981). "Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the *prima facie* case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision." *Combs*, 106 F.3d at 1528.

> [The plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision.... [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence*.

*Combs*, 106 F.3d at 1528, citing *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095 (emphasis added) (citation omitted). Once the defendant has presented nondiscriminatory reasons for its actions,

> the district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'... However, once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the

9

jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's *prima facie* case taken together with rejection of the employer's explanations for its actions. At that point, judgment as a matter of law is unavailable.

*Id.* at 1538.

Accordingly, this court must now determine "whether the plaintiff has cast sufficient doubt on the defendant's proffered reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Id.*

### B. Age Discrimination

To make out a *prima facie* case of age discrimination, the plaintiff must show (1) he is a member of the protected group; (2) his status as an employee was adversely affected; (3) he was replaced by someone "substantially younger"; and, (4) he was qualified for the job. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). At the summary judgment stage, the focus is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted. *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996). The Eleventh Circuit has "repeatedly stressed that an overly strict formulation of the elements of a *prima facie* case is to be avoided." *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1556 n.12 (11th Cir. 1995).

The parties do not contest the first two elements: Stiefel is a member of the protected group and he was terminated. Construing the evidence in a light most

favorable to the plaintiff, it shows that Stiefel has established a *prima facie* case concerning the other two elements. He was qualified for the position having been employed at Tyson as a truck driver for approximately eight years, he was eligible to participate in the company's annual awards program until 1996, and he had not been charged any points against his driving record until 1996. After he was terminated, his truck was used by a younger driver. Although the plaintiff's showing on this last element is marginal[1], counsel for the defendant correctly notes that the Eleventh Circuit has generally "held that this is not an absolute bar to the establishment of a *prima facie* case of discrimination." (Def. Br., p. 13). This court agrees and finds that if left unrebutted, the facts could lead a reasonable person to infer age discrimination.

Because a *prima facie* case has been demonstrated, the next matter is whether there is direct evidence of discrimination. What constitutes direct evidence is not always clear. *See Dilla v. West*, 4 F. Supp. 2d 1130, 1138 (M.D. Ala. 1998). Generally, however, direct evidence of discrimination is "evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997), *citing Rollins v. Tech South, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987). The Eleventh Circuit recently explained in an employment

---

[1] Herren stated that he believed that no one was hired until after the winter months and production increased, which was after he retired. (Plaintiff's Ex. 11, p. 61). ClaudeVineyard, another driver, stated in a declaration that a younger driver used Stiefel's truck after he was terminated. (Plaintiff's Ex. 8, p. 2). Under these facts, and the defendant's general assertion, the showing is sufficient. *See Zappa v. Wal-Mart Stores, Inc.*, 1 F. Supp. 2d 1354, 1356 (M.D. Fla. 1998)(Conclusory statements do not properly demonstrate an absence of a genuine issue).

11

discrimination case the impact that direct evidence has on an analysis such as this:

> When there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available. . . .The basis for the analysis is that once a plaintiff produces direct evidence of a discriminatory motive, and the trier of facts accepts this testimony, 'the ultimate issue of discrimination is proved.' . . . As such, 'the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account.'

*Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 961-962 (11th Cir. 1997).

> Direct evidence of unlawful employment discrimination [or retaliation] consists of statements by a person with control over the employment decision 'sufficient to prove discrimination without inference or presumption.' . . . The statements must reflect a 'discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.' . . . . Further, the statements 'must be made by a person involved in the challenged decision.' Evidence is not direct when the statement only 'suggests discrimination' or 'is subject to more than one interpretation.' . . .

*Moore v. Alabama State University*, 980 F. Supp. 426, 433 (M.D. Ala. 1997). It is "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . [that] constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

The only possible direct evidence in this case is the statements alleged to have been made by Herren. They include inquiries regarding if and when Stiefel intended to retire. Applying the *Merrit* standard, Herren's statements do not constitute direct evidence. They, however, do constitute circumstantial evidence of intent.

12

Because there is no direct evidence of discrimination, Stiefel relies on circumstantial evidence to demonstrate discriminatory intent. This includes the statements by Herren, Tyson's treatment of other drivers, and Herren's purported failure to follow company policies. Having demonstrated a *prima facie* case, the burden is on Tyson to articulate a legitimate nondiscriminatory reason for Stiefel's termination. Tyson claims the reason was Stiefel's poor driving performance that resulted in a violation of the company's safe driving policy.

The applicable Fleet Driver's Manual provides that "[e]ach driver for Tyson Foods will be evaluated on a point system according to the traffic violations on their M[otor] V[ehicle] R[eport]." (Plaintiff's Ex. 1, p. 13). It provides a specific number of points for each violation occurring within "a 12 month safety year (October 1 through September 30)" and that the points are determined by severity. The severity of an incident is to be decided by a supervisor and the Risk Management/Fleet Safety Department. Any driver who accumulates nine to twelve points is to be issued a warning letter. Any driver who accumulates thirteen or more points is to be barred from operating a Tyson vehicle.

Stiefel was assessed six points for each of his three accidents during 1996. Concerning the first accident, Herren assessed Stiefel six points after finding that it was a preventable accident. He decided that Stiefel "failed to stop at a posted intersection." He states that he informed Stiefel of this assessment. Concerning the second accident,

13

Herren assessed Stiefel six points due to improper and unsafe passing. He told Stiefel of his decision and informed him that the Safety Review Board was conducting a review of the Compton accident that preceded his accident on the same day and Stiefel could present his situation to the Board. Stiefel appeared before the board and was ultimately charged with six additional points. Herren nor the company provided Stiefel with a warning letter as called for by Tyson's policy. Concerning the last accident, Herren determined that it was preventable and assessed Stiefel six more points. This resulted in Herren calling Stiefel into his office about one week later and terminating him.

As Tyson has presented "legitimate, nondiscriminatory reasons" for terminating Stiefel, he now has the opportunity to challenge the company's explanation. In considering the motion for summary judgment, the court must "determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs,* 106 F.3d at 1538.

Stiefel challenges Tyson's explanation by asserting that (1) Tyson did not follow the Professional Driver Evaluation System it implemented, (2) younger drivers were treated differently than Stiefel, and (3) Herren and Pruitt were prejudiced towards Stiefel. The record is clear that Tyson did not follow the driver evaluation program found in the Fleet Driver's Manual. First, Herren did not provide Stiefel with the required warning letter after the second accident. Second, Herren used the third

14

accident, which occurred on private property and was not reported on any MVR, even though the policy explicitly states that the "driver is to be evaluated on a point system according to the traffic violations on their MVR." (Plaintiff's Ex. 1, p. 13). Third, Herren terminated Stiefel after the third accident instead of barring him from driving a Tyson vehicle, which is what is called for by the policy. It is not possible to derive any legitimate reason for these variations in Tyson's records since they do not exist. To the extent Herren states that he told the drivers in safety meetings about such deviations, this is disputed by Stiefel.

Tyson's explanation is further called into question due to Herren's persistent inquiries of Stiefel regarding whether he was going to retire. Stiefel states that he was questioned by Herren twelve to fifteen times from 1995 until he was terminated on October 6, 1996. The last time it was mentioned was June 1996, between the first and second accidents. Examples of the comments included, "[I]f I was you, I would retire and enjoy it," "At your age, you ought to done be retired. At your age, you ought to be home enjoying life," and "[h]e [Herren] would ask me when I was going to retire or if I wasn't going to retire. A few times he told me me and him ought to retire together." (Plaintiff's Ex. 10, pp. 136-137, 139, 155). Although these statements do not constitute direct evidence of discriminatory intent, when considered in context with the foregoing conduct, it constitutes circumstantial evidence of an improper motive.

Tyson's actions are further called into question as the evidence shows that at least

15

one driver, Kenneth Kilgore, who was approximately twenty years younger than Stiefel, was not assessed points when he "damaged tires, wheel rims, dented the trailer and truck, broke[] light covers and [did] other assorted minor damage to the truck or trailer" he operated. (Plaintiff's Ex. 7, p. 2).[2]

The Eleventh Circuit has made it clear that the "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how highhanded its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Even with this admonition in mind, the court finds that the plaintiff has sufficiently called into question Tyson's explanation, warranting the denial of the motion for summary judgment on the claim of age discrimination.

### C. Retaliation

To make out a claim of retaliation under the ADEA, the plaintiff must establish (1) that the plaintiff engaged in statutorily protected expression, (2) that he was discharged or suffered some other adverse employment decision, and (3) that there is a causal connection between the protected conduct and the adverse action. *Hariston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). To prove the causal relation

---

[2] Mr. Kilgore also specifies that other drivers had other accidents which were not charged. This evidence, however, appears to be premised on hearsay. Accordingly, it is excluded from consideration at this juncture.

element, "'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Meeks v. Computerland Associates Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994), *quoting EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-1572 (11th Cir. 1993). The "plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." *Harrison*, 9 F.3d at 920. In assessing the evidence, the closeness of the adverse treatment to the protected activity is an important, but not controlling, factor and may be sufficient to establish a causal connection. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163-1164 (11th Cir. 1993); *but see Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 652 & 654 (11th Cir. 1983)(holding that plaintiff failed to establish a causal link between her transfer and her activity even though she was transferred shortly after filing a written complaint with the EEOC).

Stiefel asserts that when he was informed that he had to go for a physical early, during August 1996, he told Herren "something" about discrimination, but he could not remember what he said. (Plaintiff's Ex. 10, p. 126). He could not remember if there was any response. He also asserts that when he was terminated, no efforts were made to place him elsewhere within the company. Specifically, he asserts that there was a truck loader position available that was filled by a younger individual. These actions, he claims, amount to retaliation.

Although the standard on a motion for summary judgment is quite deferential,

17

Stiefel must nevertheless offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Liberty Lobby*, 477 U.S. at 256, 106 S. Ct. at 2514. Here the evidence, at best, is that about two months before he was terminated, Stiefel made some comment to Herren about discrimination and that when he was terminated, the company made no effort to place him elsewhere. Although the decision to terminate Stiefel without further consideration of him for any other position may be circumstantial evidence of age discrimination,[3] under the facts presented in this case, it is insufficient to defeat the motion for summary judgment on the retaliation claim. There is no evidence that when Herren decided to terminate Stiefel he was aware of any protected activity by Stiefel. To the contrary, Stiefel's deposition shows that when he was told he was terminated by Herren he then stated, "I just told him that I was going to sue him if he was going to fire me" and because he (Herren) had never disciplined anyone else before that. (Plaintiff's Ex. 10, p. 106). Upon further questioning, the following occurred:

> Q. What did you tell him [Herren] you was [sic] going to sue him for?
>
> A. Age discrimination.
>
> Q. Had you ever said that to him before?
>
> A. No.

---

[3] In *Jameson*, 75 F.3d at 1532-1533, the court noted in a reduction-in-force case, that an inference of discrimination is permissible when a job for which the plaintiff is qualified and for which he applies is offered to an individual outside the protected group.

(*Id.* at pp. 106-107). Further, there has not been a sufficient causal showing between any protected conduct and the adverse employment decision. Although Stiefel was terminated, nothing connects this action to any protected activity. Herren made the decision to terminate Stiefel before he mentioned on October 8, 1996, about bringing a discrimination claim.[4] That statement was made after Herren decided to terminate him. The record is also devoid of any evidence that Stiefel requested or sought any other position upon his termination.

## IV. CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment is denied as to the age discrimination claim and granted as to the retaliation claim. An order consistent with the findings and conclusions reflected in this Memorandum Opinion will be entered contemporaneously herewith.

The Clerk is directed to serve a copy of this Memorandum Opinion upon counsel for the parties.

DONE this the \_\_13rd\_\_ day of October, 1998.



JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE

---

[4] Stiefel filed his EEOC claim on October 16, 1996, and an amendment on January 17, 1997. He did not levy a retaliation charge.